**AFFIRMED and Opinion Filed April 21, 2023**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00132-CR

**ANGEL AMBROSE, Appellant**
**V.**
**STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F10-59769-X**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Breedlove
Opinion by Justice Breedlove

In 2012, appellant Angel Ambrose was convicted of aggravated sexual assault of a child under the age of 14 and was sentenced to 15 years in prison. In 2018, appellant obtained post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. After a hearing, the trial court found that "had these results been available during Ambrose's trial, it is NOT reasonably probable that he would not have been convicted."

Appellant appeals the trial court's finding, complaining that the trial court erred in failing to hold a hearing under Texas Code of Criminal Procedure article

64.04 and that had the results of the DNA testing been available during appellant's trial it was not reasonably probable that he would not have been convicted. We affirm the trial court's judgment.

## I.     BACKGROUND

Appellant was charged with penetrating the sexual organ of a minor with his finger. Complainant J.G. was seven years old at the time of the offense on or about April 11, 2009. J.G. was taken to a hospital where she underwent a sexual assault examination. At that time, vaginal, anal, and oral swabs were collected. The samples were tested for the presence of seminal fluid shortly after, but no seminal fluid was found on the samples and no DNA testing was conducted. The samples were retained by the Dallas Police Department.

On December 17, 2012, appellant entered a negotiated plea of guilty and was sentenced to 15 years' imprisonment. On April 10, 2017, appellant filed a motion and supporting affidavit requesting post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. The State did not oppose the motion. The court granted the motion on March 21, 2018, and ordered Short Tandem Repeat (STR) Polymerase Chain Reaction (PCR) and Y-STR testing of the swabs from the sexual assault kit along with buccal swabs obtained from appellant.

The DPS lab presented the results of the testing in three written reports. The first report, dated August 14, 2019, described the items received and analyzed by DPS. These items included the vaginal, anal, and oral swabs from the sexual assault

–2–

kit along with a buccal swab from appellant. The kit also contained some smear slides which were not examined.

The second report, dated December 3, 2019, concluded that based on STR testing of the swabs, all swabs yielded a partial DNA profile that originated from a single female individual. Appellant was excluded as a contributor to these profiles.

The third report, dated the same day, reported that no Y-STR profile was obtained from either the vaginal or anal swabs. However, a partial Y-STR profile consistent with appellant was obtained from the oral swabs. DPS concluded that "At these loci, the selected profile is found in 4 of 5,717 total individuals within the database. In addition any paternally-related male relatives of [appellant] cannot be excluded as being the contributor of this male DNA profile."

On April 29, 2021, the trial court held a hearing via Zoom on the results of the post-conviction DNA testing which both the State and appellant's counsel attended. On August 11, 2021, the court issued its findings, concluding that "had these results been available during Ambrose's trial, it is NOT reasonably probable that he would not have been convicted."

Appellant appealed the trial court's ruling on September 7, 2021. In two issues, appellant complains that (1) the trial court erred in failing to hold a hearing under Article 64.04; and (2) the trial court erred in finding that had the DNA results been available during appellant's trial it was not reasonably probable that he would not have been convicted. In response, the State argues that (1) the trial court

complied with Article 64.04 by holding a hearing on the post-conviction DNA test results; and (2) the trial court properly found that there was no reasonable probability the DNA test results would have led to appellant's acquittal had they been available during his trial.

## II. STANDARD OF REVIEW

We apply a bifurcated standard of review of a trial court's findings under article 64.04, affording almost total deference to the trial court's resolution of historical facts and mixed questions of law and fact that turn on determinations of witness credibility and demeanor but reviewing de novo questions of law and mixed questions of fact that do not turn on credibility and demeanor determinations. *Dunning v. State*, 572 S.W.3d 685, 692 (Tex. Crim. App. 2019). We review the trial court's finding in this case de novo because it does not turn on witness credibility or demeanor determinations. *See Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

## III. DISCUSSION

### A. Whether the trial court failed to hold a hearing under Article 64.04

In his first issue, appellant contends the trial court erred in failing to hold a hearing under Article 64.04. Article 64.04 provides that "[a]fter examining the results of testing under Article 64.03, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted."

–4–

TEX. CODE CRIM. PROC. ANN. art. 64.04.  Appellant states that the trial court failed to hold a hearing on the results as required by statute.  Specifically, appellant argues that the failure to hold a hearing deprived him of the opportunity to cross-examine the DPS analyst who conducted the testing and to present objections to the test results or reasons for the court to consider the results as favorable to appellant's claim.  He further argues that he was deprived of any opportunity to explain to the court why his guilty plea was inaccurate or unreliable.  However, the reporter's supplemental record shows that the trial court did hold an article 64.04 hearing on April 29, 2021, via Zoom, and that both the State and appellant's counsel attended.  At the hearing, the court provided appellant's counsel the opportunity to present evidence or challenge the State's evidence or arguments.   Instead, appellant's counsel stated:

> I would agree with everything that State's counsel has stated about the case and the testing so far.  We have not been able to discover any additional newly discovered evidence that would support any other identification of the actual perpetrator, if there was one.
>
> So we have not been able to find or develop any evidence that would lead to an alternative suspect that we could argue would elevate this evidence to the necessary level to meet the burden coming forth that this would be exculpatory.
>
> So we are in agreement that this is not exculpatory because it does include, potentially, Mr. Ambrose as a perpetrator in this testing.

When asked if either side had anything further or any questions for the court, appellant's counsel responded that he did not.  Because appellant did in fact have an

opportunity to present evidence and argument to the trial court regarding the test results or to object to the State's evidence and did not do so, we overrule appellant's first issue. *See* TEX. R. APP. P. 33.1(a)(1)(A).

**B. Whether the trial court erred in finding no reasonable probability that the DNA results would have led to appellant's acquittal**

In his second issue, appellant contends the trial court erred in finding that had the DNA results been available before his trial, he likely would not have pleaded guilty and would have been acquitted at trial because the results did not corroborate the allegations of vaginal penetration or establish him as the perpetrator of the assault "to the exclusion of anyone else." However, we must first examine whether appellant preserved his complaint for appellate review.

To preserve error for appellate review, an appellant must show that he objected in the trial court and that his objection "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). The issue on appeal must comport with the objection made at trial. *Id.* (citing *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

The objecting party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him

at a time when the judge is in the proper position to do something about it." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). In determining whether an argument on appeal comports with an objection made at trial, we look to the context of the objection and the shared understanding of the parties at the time. *Lankston*, 827 S.W.2d at 911. A trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to the court. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (citing *Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002)).

As noted above, appellant's counsel attended the article 64.04 hearing on April 29, 2021. At that hearing, the State argued that the results of the testing were not exculpatory as to appellant, and that, in fact, appellant could not be excluded as a contributor to the male DNA sample found on the oral swab. In response, appellant's counsel agreed with the State's arguments as we have quoted above. Based upon the statements of counsel and the findings in the reports, the court then signed the order finding that there was no reasonable probability that appellant would not have been convicted. He did not object to the contents of the report. He did not object to the court's findings. He did not ask for or receive rulings. Instead, appellant agreed with the State's (and ultimately the trial court's) conclusions regarding the import of the DNA test results. Therefore, we hold appellant did not

preserve his complaint on this issue for appellate review. TEX. R. APP. P. 33.1(a)(1)(A); *Clark*, 365 S.W.3d at 339.

However, even if appellant had preserved the issue for appeal, the trial court did not err in finding it was not reasonably probable that appellant would not have been convicted in light of the new DNA test results because the results contained no exculpatory evidence, and in fact, contained new inculpatory evidence that supports the complainant's assertions that appellant kissed her on the mouth and put his hand over her mouth during the alleged sexual assault. *See Ex parte Gutierrez*, 337 S.W.3d 883, 892 (Tex. Crim. App. 2001) (to create a reasonable probability of acquittal, the DNA results must "affirmatively cast doubt upon the validity of the inmate's conviction" and not merely "muddy the waters"). We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

220132F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ANGEL AMBROSE, Appellant

No. 05-22-00132-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F10-59769-X.
Opinion delivered by Justice Breedlove. Justices Molberg and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 21, 2023